JAMES FISK, Jr. and others *vs.* THE CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD COMPANY, and others.

RUFUS HATCH *vs.* THE SAME.

Where a plaintiff, on an application by the defendants to remove the action to the circuit court of the United States, showed that he had had a domicil in Boston for several years; that last year he purchased a house there, and there his family resided; he coming to the city of New York for the purposes of his business, and returning to his home, in Boston, at intervals as his occupation permitted; *Held* that he was to be deemed a citizen of Massachusetts.

The inference as to citizenship is strengthened, in such a case, by the fact that the party has not voted in this state, but has done so regularly in another state, since he took up his domicil there several years ago.

What facts will be deemed sufficient to show that a party has not changed his residence from another state to this ?

Presumptively, citizenship of a defendant in another state, being once established, still continues; and if the question as to a change of it be in doubt, the doubt must be resolved against the plaintiffs, upon whom is the burthen of overcoming the presumption.

The object, and the effect of the statutes of this state, passed in 1853 and 1855, requiring corporations created by other states, and doing business in New

Fisk *v.* Chicago, Rock Island and Pacific R. R. Co.

York, to appoint an agent here, to receive service of process against such corporations, were to prevent our citizens being forced to bring a suit against a foreign corportion transacting business within our territory, and to afford them a method of commencing a suit here, against such foreign company; but without in any way cutting off the right of such company, after being regularly sued in our courts, to remove the litigation to the courts of the United States.

A railroad company, whatever acts it may have done within our territory, dwells in the place of its creation, and if not chartered by this state, it is a foreign corporation—a citizen of another state—and its citizenship cannot be questioned, for the purpose of defeating the jurisdiction of the United States courts over an action brought against it.

Unless all the plaintiffs be citizens of the state in whose court the action is brought, and all the defendants citizens of a state other than that, the action cannot be removed to a federal court, under the judiciary act of 1789.

Where it appeared that in one of two suits sought to be removed, the plaintiff was a citizen of this state; in the other the plaintiffs were citizens, one of this state, and the others of other states; and in both cases the defendants consisted partly of citizens of this state and partly of citizens of other states; *Held* that the actions could not be removed, under that act.

The acts of congress of 1866 and 1867, in relation to the removal of causes from state courts to United States courts, commented on and construed.

THE above actions were brought against the defendant, the railroad company, and several individuals who were the directors of said company, for the purpose of setting aside an issue of new stock which had been made, or attempted to be made by the directors; and obtaining an injunction to restrain any transfers or sales of such new stock, in future.

The defendants now applied for an order removing the actions to the circuit court of the United States.

CARDOZO, J.   The applications to remove these cases to the United States Circuit Court, notwithstanding the learned and elaborate discussions by the distinguished counsel, do not, I think, present any very abstruse inquiries or serious difficulties.

It will be best first to settle the question of citizenship. No point arises in this respect, except as to Messrs. Fisk and Belden, two of the plaintiffs in one of the suits, and

Fisk *v.* Chicago, Rock Island and Pacific R. R. Co.

as to the Chicago, Rock Island and Pacific Railroad Company, and Mr. Tracy, who are defendants in both actions. All the other parties, whether plaintiff or defendant, are conceded to be citizens of this state.

I am of opinion that neither Mr. Fisk, Mr. Belden, nor Mr. Tracy is a citizen of this state, and also that the railroad company, for the present purpose, is to be regarded in the light of a citizen of another state. As to Messrs. Fisk and Belden, their affidavits of citizenship, as distinguished from mere temporary residence, are explicit and satisfactory. Mr. Fisk shows that he has had a domicil in Boston for several years; that last year he purchased a house there, taking the title in his wife's name, and that there his family live, he coming to this city for the purpose of his business and returning to his home, in Boston, at intervals, as his occupation will permit. He would be regarded as a non-resident of this state, within the meaning of the statute authorizing attachments against the property of non-resident debtors. This view, in conjunction with his oath upon the subject, leaves no doubt that he is, as he asserts, a citizen of Massachusetts.

Substantially similar facts are presented by Mr. Belden, and the question as to him is made more clear by proof that he has not voted in this state, but has done so regularly in New Jersey, since he took up his domicil there, several years ago.

I have not overlooked the fact that both of those gentlemen in the affidavits of justification to the undertaking on the issuing of the injunction, declare themselves to be residents of this state; but even if that be regarded as wholly inconsistent with their affidavits as to their being citizens of other states, I think the latter affidavits should not only be believed, but should control the question; because those affidavits in addition to a statement of a conclusion, to wit, that they are citizens of a specified state, disclose the facts upon which that conclusion is

based, and no evidence has been given disputing or deny-
ing any of the facts detailed by them.

Respecting Mr. Tracy, the testimony is of a somewhat
different character, but still I think there is enough to
show that he has not changed his residence from Chicago
to this city, nor become a citizen of this state instead of
Illinois. There is no dispute that for many years prior to
his becoming president of the railroad company, he was a
citizen of Illinois. He swears that he is so yet. The
plaintiff's theory is that he ceased to be so about the time
that he accepted the presidency of the company. We
must look at the proofs to determine the question. Not
being a man of family, the circumstances may not be so
marked in his, as in the case of Messrs. Fisk and Belden,
but I think they are not the less certain. Presumptively,
his citizenship of Illinois continues; and if the question
of a change of it be left in doubt, the doubt must be
resolved against the plaintiffs, upon whom is the burthen
of overcoming that presumption. But I see no circum-
stance inconsistent with Mr. Tracy's oath that he is still
a citizen of Illinois. He was frequently, during the past
year, back and forth between Chicago and New York, and
invariably, and when he could have had no motive for de-
ception, placed his residence, on the books of the Fifth
Avenue hotel, on arriving in this city, as being at Chicago.
When he conveyed real estate, he described himself as of
Chicago, and he frequently spoke of being a citizen of
Illinois, and of his intention not to change his residence;
and no person has been produced to prove that he ever
asserted anything to the contrary. In Illinois he took the
incipient steps to exercise the right of suffrage, having
his name registered so as to entitle him to vote if he chose,
or if his presence at Chicago, at the proper season, per-
mitted him to do so. In that state only, he paid whatever
personal or income tax he has paid. That he did not vote
at all, at recent elections, does not assist the plaintiff's

theory. Had he voted here, or had he caused his name to be registered here, that would have been evidence that he designed to make this state his home; but his omission to place himself in a position to exercise here the right of suffrage, of which it is only reasonable to believe every citizen will feel it his duty and his privilege to avail himself, is rather corroborative of his claim that he did not intend to abandon his residence in Chicago, and that he lost his vote at the last election there, by temporary absence only.

Nor does the proof that Mr. Tracy has paid no personal nor any income tax in Chicago, since the year 1866, make against his claim. It would be significant if the plaintiff had shown that any such tax had been paid by Mr. Tracy *here*, but the omission to pay at all, here or elsewhere, may be attributable, so far as the United States internal revenue is concerned, to the fact that Mr. Tracy claims "not to have made any profit," and so far as the state of Illinois, or the city of Chicago is concerned, may depend upon local laws under the provisions of which, perhaps, he may not have been liable to taxation. However this may be, is not material. That Mr. Tracy has, during a period, escaped all taxation (except on real estate) may or may not be consistent with his duty as a citizen, but I think it sheds no light upon the question of where he ought, if his property demanded it, to have been assessed.

I must conclude that he is still a citizen of Illinois.

As to the railroad company, it is claimed that although not chartered by or under the laws of this state, yet by the course it has pursued, having an office and transacting its principal business here, and by force of the statute of 1855 (*Laws of* 1855, *ch.* 279) it is to be deemed not a foreign corporation, in the sense of the acts of congress, under which, according to the decisions of the Supreme Court of the United States, a corporation is to be regarded as a "citizen" of the state from which it derives its char-

Fisk *v.* Chicago, Rock Island and Pacific R. R. Co.

ter, with the view of determining in what courts it may claim to sue and be sued.

Two decisions in this state, one in the superior court, by Justice Robertson, (*N. Y. Piano Co.* v. *N. H. Steamboat Co.,* 2 *Abb. Pr., N. S.,* 357,) and the other, a special term case, in this court, are cited in support of this proposition. The one in this court is *Stevens* v. *The Phœnix Insurance Company,* (24 *How. Pr.* 517,) decided by Mr. Justice Allen, in 1863, in Oneida county. In the latter case some reliance seems to have been placed upon the " act to provide for the incorporation of fire insurance companies " in this state, (*Laws of* 1853, *ch.* 466,) and it is now contended that the same effect is produced by the act of 1855, which is not restricted to insurance companies. The act of 1853, referring exclusively to fire insurance companies, of course, has no application here.

It is not certain that the act of 1855 applies, either. It does not appear when the railroad company was chartered, and the act of 1855 would seem to operate only upon corporations theretofore created, as it provides that " every insurance and other corporation, created by the laws of any other state, doing business in this state, shall, *within thirty days after the passage of this act,* designate some person residing in each county where such corporation transacts business on whom process " may be served. As the designation was to be made within thirty days after the act took effect, which was to be immediately on its passage, it may well be that the statute does not relate to any corporation chartered after its passage, and the plaintiffs, who seek to bring this company under its action, have not shown that the incorporation of this railroad was prior to that time. But I do not mean to let my decision rest upon this ground. I assume for the present purpose that the railroad company is within the operation of the statute.

I am of opinion that the object and the effect of the provisions of the acts of 1853 and 1855, were to prevent

our citizens being forced to go to another state to bring a suit against a foreign corporation which transacted business within our territory, and to afford them a method of commencing a suit here, against such foreign company; but without in any way cutting off, if indeed that could be done, the right of the foreign body, after being regularly sued in our courts, to remove the litigation, not to another state, but to the courts of the United States.

I do not see that keeping an agent here, either pursuant to a statute or voluntarily, without any legal obligation to do so, upon whom process can be served, works an agreement to concede that the foreign corporation doing so is a citizen of this state, or can estop it from asserting the truth, any more than keeping property within our jurisdiction, by attachment of which the defendant might be compelled to appear, would work a waiver of his right to claim, at the time of entering his appearance, that he was not a citizen of this state. The foreign corporation by doing business and keeping an agent here virtually agrees to admit that it may be regularly brought into court here, but it does not agree that after being regularly sued, it will not, as any other citizen of another state might, exercise its constitutional right to transfer the litigation to the courts of the United States. Certainly there would seem to be no more reason or justice in preventing a foreign corporation which, by its officers, chanced to be temporarily within our jurisdiction, so as to be sued in our courts, from removing the action to the courts of the United States, than there would be in depriving the citizen of another state, who transacted business here, from taking to the latter courts a suit which had been brought against him by personal service of process upon him while on a visit to our state, or in which he appeared to protect his property which had been attached because of his non-residence, and which he could have removed by making his claim to do so at the time he appeared. In each case

Fisk *v.* Chicago, Rock Island and Pacific R. R. Co.

our citizens are saved the annoyance and inconvenience of being obliged to travel to a foreign state to institute the suit, and in each case the defendant would and should have the right to avail himself of the statutes of the United States to remove the litigation to the federal courts.

Whether the cases cited by the plaintiff's counsel are to be understood as resting exclusively upon the statutes of our state above mentioned, or depend upon the theory that, doing business here, a foreign corporation, either with or without a compliance with those statutes, becomes to any extent a citizen of this state, I think they are fallacious; and yet, perhaps, I might have felt called upon not to deviate from them upon my own judgment alone. I confess I do not understand or appreciate how doing business here can affect the citizenship, so to speak, of a corporation, any more than the same circumstance would affect the citizenship or residence of an individual; and it is manifest that an individual may do business here, and yet his citizenship of another state remain unchanged and unaffected by it.

In *Dennistoun &c.* v. *New York and New Haven R. R. Co.,* in the common pleas, (1 *Hilt.* 62,) Judge Daly, whose decision was affirmed by the general term, in a learned and clear opinion held the company to be a citizen of Connecticut, although by a statute of this state, passed in 1846, (*Laws of* 1846, *p.* 231,) the company was authorized to extend and continue its road through part of this state, and for that purpose to purchase and hold real estate in our territory. It is to be remarked that although that company had its principal office, and transacted most of its business here, no one seems to have supposed that either of those facts or the act of 1855, before alluded to, deprived it of its character as a citizen of Connecticut; but it was claimed that by force of the statute of 1846 it also became a citizen of this state. But Judge Daly held otherwise, saying that "the personalty of the defendants

as a citizen, within the meaning of the judiciary act of the United States, was established and fixed by the state of Connecticut, which first gave them their corporate being, and for the purpose of this motion they must be regarded and treated as a citizen of that state." Surely if such a statute, of our own state, as that of 1846, regarding that railroad company, and its having an office and doing its principal business here, did not impress upon the New Haven Railroad Company the character of a domestic corporation, the mere transaction of business, and the keeping of an office and agents here, cannot affect the citizenship of the railroad company in this case. But without pursuing these considerations further, I think it sufficient to say, that not only would it appear that the well considered opinion of Judge Daly had been overlooked, but the decisions of Justices Allen and Robertson are entirely irreconcilable with the case of the *Ohio &c. R. R. Co.* v. *Wheeler*, (1 *Black*, 286,) which was not referred to by either of those judges, and was therefore probably not drawn to their attention, but which, being a decision of the Supreme Court of the United States, and upon a question peculiarly within its jurisdiction, I must, for that reason, if no other, consider paramount authority, and govern myself by it. Two propositions, both necessarily involved in the case, are, with his usual clearness and precision, distinctly asserted by Chief Justice Taney, who delivered the opinion of the court, and they are decisive of the present question. They are, 1st, that a corporation must dwell in the place of its creation, and can have no legal existence out of the bounds of the sovereignty by which it was created; and, 2d, that a suit by or against a corporation, in its corporate name, must be presumed to be a suit by or against citizens of the state which created the corporate body; and no averment or evidence to the contrary is admissible for the purpose of withdrawing a suit from the jurisdiction of a court of the United States.

Fisk *v.* Chicago, Rock Island and Pacific R. R. Co.

"A suit by or against a corporation in its corporate name," must be regarded "as a suit by or against citizens of the state which created it."

I must therefore hold that the railroad company, defendant here, whatever acts it may have done within our territory, dwells in the place of its creation, and not having been chartered by this state, is a foreign corporation—a citizen of another state, (of what state, since it is not of this, and whether of one or two states, I do not stop to inquire, because wholly immaterial here)—and its citizenship cannot be questioned for the purpose of defeating the jurisdiction of the United States courts over an action brought against it.

It results from these views, that the position of these cases as respects parties is as follows: in one suit, the plaintiff is a citizen of this state; in the other, the plaintiffs are citizens, one of this state, and the others of other states, and in both cases the defendants consist partly of citizens of this and partly of citizens of other states.

This statement of the situation of the parties suffices to show that there can be no removal of the causes, under the judiciary act of 1789.

It does not now need citation of authority to sustain the proposition which, indeed, was scarcely disputed on the argument, that unless all the plaintiffs be citizens of the state in whose court the suit is brought, and all the defendants citizens of a state other than that, the action cannot be removed under that statute.

This brings us to the consideration of the act of 1866. (14 *U. S. Stat. at L.* 306.) A careful examination of that law leads to the conviction that it has no application to the case of Messrs. Fisk, &c., for the reason that that suit is not brought by a "citizen" of this state, and it is only in an action brought by a "citizen" (so far as the present question is concerned) of the state in the courts of which the case is pending, that a removal can ever be demanded.

The first element necessary as the basis of the application to remove is lacking here. The meaning of the term " citizen," in such statutes, has been long established.

The plaintiffs collectively must, as we have seen, be citizens of this state, or they do not come within the requirement of the statute. If one be not a citizen of this state, although the others are, the action is not brought by a " citizen" of this state. This is so clearly put in the excellent opinion of Judge Daly, which I have before mentioned, that no other authority need be cited. There is nothing in the present act to indicate that congress intended to legislate, as far as the parties plaintiff are concerned, upon the theory that where there were several individuals of different states joined as the party plaintiff any other rule should be applied than that which had long before existed when construing a statute which, in reference to the parties plaintiff, employs precisely the same language as is used in the act of 1866. I think, therefore, that that language should be understood exactly as it was theretofore defined. This view is strengthened by the fact that congress resorted to language showing that it recognized the necessity of doing so, which leaves no doubt that a new rule governs as regards parties defendant. The just inference is, then, that the language of the judiciary act was adhered to in reference to the party plaintiff, because no change of the law was contemplated or desired, while other phraseology was introduced as to the parties defendant, because a new rule was to be made as to them.

But in Mr. Hatch's suit the difficulty, which I have mentioned, in the way of the removal of the cause, does not exist. Congress might very well have considered that if the action were not exclusively by a citizen of the state where it was brought, there would be no reason for allowing a removal at all, and yet have thought that in a case where the plaintiffs were all citizens of the state in which

Fisk *v.* Chicago, Rock Island and Pacific R. R. Co.

the action was brought, and there were associated with a defendant who was a citizen of that same state, persons who were citizens of another and different state, any such foreigner ought separately, in certain instances, to be allowed the privilege of invoking the federal judiciary. And, in my judgment, that is precisely the effect of the statute under examination. The whole context of the act shows that congress designed to legislate for cases where there were several defendants, comprising citizens of the state in which the action was instituted and citizens of other states. And by this statute it is, substantially, provided that, when an action in a state court is brought by a citizen of that state, against a citizen of the same state in conjunction with citizens of other states, any defendant who is a citizen of the other state may, in certain cases, transfer the litigation to the United States courts, so far as it affects him. Now, in the suit of Mr. Hatch, all the requirements thus described exist.

The action is by a citizen of this state against another citizen of this state and citizens of other states. What else, then, must appear, before the defendant, who is a citizen of another state, can claim to remove the litigation?

1st. The matter in dispute must exceed the sum of $500, exclusive of costs. With great deference to the distinguished counsel for Mr. Hatch, I think the cases relied upon by him to sustain his position that the present action does not fall within that description, have no analogy to this litigation. They did not concern property at all. This does bear upon property and upon property of enormous value.

2d. The statute then provides that if the suit be brought for the purpose of restraining or enjoining the person not a citizen, *or,* if there can be a final disposition of the controversy as respects him, without the presence of the other defendants, then the citizen of the foreign state may remove the cause, "*as against him,*" to the United States

courts. Of course it is agreed that this action is brought to restrain Mr. Tracy and the railroad company. Must it also appear that the suit can proceed to a final determination of the controversy, as respects them, without the other defendants?

I think not. The word "or" is disjunctive, and is so used in this statute as to show that congress was providing for two different classes of cases; first, where the suit was to obtain an injunction; and, second, where the presence of the other defendants was not necessary to the determination of the controversy as respects the defendant seeking the change of forum. I cannot say that congress did not consider that restraining a person was of such serious importance as to justify a provision that in every such case, even if it should arrest the litigation, a citizen of another state might require that the action be transferred, if the condition of the parties plaintiff and defendant were as has been previously described. It would clearly be within the constitutional authority of congress, when the plaintiff is a citizen of one state, to deprive the state courts of jurisdiction of any action to which a citizen of another state was a necessary party, whether alone or with others; and therefore it is equally within its power to provide for the removal of such a case after it has been instituted in the state court.

I have nothing to do with the consequences or the embarrassments which may flow from the removal. The responsibility of the legislation does not rest with me; but I am responsible for the construction I give to that legislation; and I am bound to give it a fair and just one, and not to resort to ingenious and refined theories and unusual interpretations of words which are of common use, and of sentences which are of ordinary import, for the purpose of evading or defeating what congress may have, perhaps unwisely, attempted.

Mr. Tracy and the railroad company are within the pro-

Fisk *v.* Chicago, Rock Island and Pacific R. R. Co.

visions of the statute of 1866, in the suit brought by Mr. Hatch, and so far as relates to them, and to that extent only, the action must be removed to the United States courts pursuant to their petition; and when so removed it is by the statute "to proceed, in the United States court, in the same manner as if it had been brought there by original process."

I only mention this for the purpose of saying that that portion of the section does not bear upon the question of removal, and does not furnish any guide as to the *cases* which are to be removed. It only prescribes the practice which is to govern the proceedings in the action after its removal, viz., the same practice which prevails in actions originally brought in the courts of the United States. If it be said that the severance of the suit will prevent any efficient litigation and leave the plaintiff without remedy—as to which I express no opinion—I have only to answer that that misfortune proceeds from the exercise of the right of the United States to claim exclusive jurisdiction of actions between citizens of different states, and must be borne like any other consequence resulting from the constitutional exercise of sovereign will. The power to produce that effect exists, and if the exercise of it has so resulted, the courts cannot help it. It is of far less importance that the plaintiff should lose his remedy than that the courts should attempt willfully to disregard and overthrow the constitutionally exercised power of legislation.

Respecting the act of 1867, (14 *U. S. Stat. at L.* 558,) very few remarks will be necessary.

I do not find any thing inconsistent between this statute and that of 1866, and as there are no repealing words, I think the amendment is but an addition to the latter act. But I am of opinion that this statute (1867) has no bearing upon either of the cases before me. The act says that "where a suit is pending or may hereafter be brought

in any state court in which there is controversy between a citizen of the state in which the suit is brought and a citizen of another state," &c. This, I think, is no more than saying, "if a suit be brought by a citizen of the state in the court of which the action is commenced against a citizen of another state." Both sentences contain the same idea, and nothing else, differently expressed. That being understood, there is no difficulty in determining that the statute has no application to the present cases. It has been seen that when congress, as in the act of 1866, as respects defendants, designed to provide for cases where the parties were composed of several persons, citizens of different states, phraseology was used clearly evincing the intent; and therefore when, subsequently, congress employs language which had long obtained a fixed and known interpretation, there is no reason to suppose that any other meaning was sought to be conveyed than that which the courts had theretofore given to those expressions. Hence, as the terms used in this act, both as respects the party plaintiff and the party defendant, were well understood to mean that the individuals constituting such party plaintiff should all be citizens of the state in which the action was brought, and also that the individuals composing such party defendant should all be citizens of some state other than that in which the suit was commenced, and that both of those conditions of parties plaintiff and defendant should coexist to justify the removal of the action, the same construction must now be given to this statute and the same rule must obtain under it. And as the fact, as to the parties, does not bring either of these cases within that rule, I think no removal can be had under this statute.

I would only add, that it seems to me not unreasonable or unlikely that congress, when it provided absolutely for the removal of a cause upon an affidavit, resting solely on the conscience of the affiant, should have said that it

Fisk *v.* Chicago, Rock Island and Pacific R. R. Co.

would not listen to the suggestion that prejudice or local influence would prevent justice in a state court, unless all the parties on the one side were citizens of that state and all the parties on the other side were citizens of other states, and therefore that it would permit this novel proceeding only when that condition of the parties litigant existed. If it be said that when the parties were thus situated a removal might have been had under the judiciary act, and that therefore this legislation was unnecessary, if this construction of the statute be correct; the answer is, that it is a misapprehension, because the statute as thus construed provides for two matters, which congress probably thought worthy of attention, not covered by the judiciary act, viz: 1st. The removal of a case at the instance of the plaintiff. 2d. The removal of a case *at any time before final hearing or trial,* instead of limiting it to the time of entering appearance in the action, as prescribed in the act of 1789.

The magnitude of the litigation, and the grave consequences to the parties, of an erroneous decision of these questions, induced me to hear all the eminent counsel concerned, and without any restriction as to time. And impressed with the solemnity and importance of the duty devolved upon me, I have brought all the power I possess to the calm, patient and candid investigation of the subject, with the sole object of reaching an accurate conclusion. Having done this, nothing remains for me, but to declare as the result of my reflections, that the prayer of the petitioners, in the case of Messrs. Fisk and others, must be denied; and that in the case of Mr. Hatch, so far as the petition seeks the removal of the action as regards Mr. Tracy and the Chicago, Rock Island and Pacific Railroad Company, it must be granted, but to that extent only, and in other respects it must be refused.

[NEW YORK SPECIAL TERM, February 3, 1868. CARDOZO, Justice.]